LAND, J.
 

 The defendant, Molton Brasseaux, is indicted jointly with Joe Genna for the murder of one Joe Brevelle on the 28th day of August, 1926, in the parish of Beauregard.
 

 The defendants were granted a severance and were tried separately. Both defendants were found guilty as charged and sentenced to be hanged.
 

 The present appeal is prosecuted by Molton Brasseaux, who relies upon numerous bills of exception for the reversal of the conviction and sentence in his case.
 

 Bill No. 1.
 

 Each defendant filed a motion for a change of venue. These motions were consolidated, tried, and overruled.
 

 ' As the evidence taken upon the trial of the two motions is the same in each case, we do not find it necessary to go into detail in the discussion', of the motion for change of venue made by defendant, Brasseaux, but hold that this motion was properly overruled for the reasons assigned in the opinion in the case of the State v. Joe Genna, No. 28402 on the docket of .the court, post, p. 701, 112 So. 655, and this day handed down.
 

 Bill No. 2.
 

 Defendant filed a motion to have a commission of experts appointed to examine into his present sanity, before entering a plea to the indictment, and requested the appointment of an alienist named in the motion as one of the members of the commission. This request was refused by the trial judge on the ground that the commission of experts should be impartial, that the court is vested with much discretion in investigating the mental condition of a defendant at and immediately preceding the trial, and because of the great expense, trouble, and delay in procuring the services of the alienist in question, who resided beyond the jurisdiction of tlie court.
 

 Defendant contends, however, that, under Act 68 of 1918, he is entitled to have his physician present as a member of the commission to examine him as to his present mental condition.
 

 Defendant’s contention is without merit. In State v. Brodes, 157 La. 162, 102 So. 190, and in the more recent case of State v. Burnham, No. 28299 on our docket, 111 So. 79,
 
 [1]
 
 it was held that Act 68 of 1918 is not applicable to persons charged with crime, and who may set up insanity as a defense, or who may plead present insanity. The ruling of the judge a quo was correct.
 

 Bill No. 3.
 

 After the report of the commission of experts finding the defendant presently sane, his motion for a change of venue was resubmitted to the court, on the .ground that there had been circulated generally in the parish of Beauregard newspaper accounts of the trial of-the alleged accomplice of defendant, and of his statement implicating defen dr ant; said statement not being admissible in evidence against him, under the contention of the defendant.
 

 
 *691
 
 The trial judge overruled the renewed motion, and stated in his per curiam to this bill that:
 

 “No new evidence was tendered on the resubmission of the motion. The ruling was necessarily based on the record as already made up.”
 

 As the motion for change of venue was resubmitted prior to the examination of the jurors on their voir dire, such examination was not in evidence at the time of the ruling of which defendant complains. The statement in the bill made by defendant, that he makes a part thereof the entire transcript of the examination of the jurors on their voir dire, is therefore without any effect whatever, as it refers to evidence not before the court at the time the ruling was. made on the motion resubmitted.
 

 This brings us to the consideration of numerous bills of exception reserved to the overruling by the trial judge of challenges of jurors for cause, made by the defendant.
 

 Bills of Exception Nos. 4, 5, 8, 9,10, 12, 14, 15, 16 17, 18, and 19.
 

 In each of the above cases, defendant challenged the juror for cause and “for the reason that he had a fixed opinion, which he had admitted would influence him to some extent in weighing the evidence in the cáse or in arriving at his verdict.”
 

 In State v. Rini, 153 La. 57, 95 So. 400, this court held, in substance, while ruling on a number of hills relating to the competency of jurors who had formed opinions, that:
 

 “Jurors who testified that they, had formed opinions in a murder case from newspaper reports or hearing the case discussed, and some of whom testified that it would take evidence or strong positive or convincing evidence to remove such opinions, but who also testified that they could disregard their opinions and decide the case according to the law and the evidence, held not disqualified.”
 

 In State v. Holbrook, 153 La. 1032, 97 So. 30, the ruling in the Rini Case as to the test of the competency of a juror is expressly affirmed, ánd the following citation from 16 Corpus Juris, 1154, § 2650, is quoted with approval:
 

 “An opinion of a juror with regard to defendant’s guilt, which will constitute a disqualification sufficient to furnish ground for a new trial, must be a fixed, deliberate, and determined one; which cannot be removed or overcome by evidence.”
 

 See, also, State v. Bunger, 14 La. Ann. 461, State v. Caulfield, 23 La. Ann. 148, and State v. Lartigue, 29 La. Ann. 642.
 

 The answers of the various jurors challenged for cause and quoted in defendant’s brief are mere isolated expressions culled from the examination of each juror. Some of these answers were the result of confusion on the part of the juror. All of the answers were made before the jurors had been instructed by the court as to their duties in the trial of the case. After proper instruction as to the burden on the state to prove the guilt of the accused beyond a reasonable doubt, and as to the presumption by law of his innocence, and also as to the mental attitude required of a juror in a criminal case, each of the challenged jurors declared in his examination by the trial judge that he could divest his mind of any opinion or impression which he might then have and try the case according to the evidence adduced.
 

 But few of the jurors knew defendant. None of them entertained any prejudice against him, and none had talked to any of the state’s witnesses in the case. Not one of the jurors, held to be competent, declared that he had a fixed and deliberate opinion as to the guilt of the accused that could not be removed or overcome by the evidence.
 

 The- overruling of the challenges for cause in the above cases was therefore proper, in our opinion.
 

 
 *693
 
 ■ Bills 6, 11, and 13.
 

 Bill No. 6 was reserved to the ruling of the trial judge in sustaining a challenge for cause by the state of the juror Hickman, who stated on his voir dire.that he had attended the trial in the Genna Case, had heard part of the evidence, and had formed an opinion. The ruling was correct, as it is manifest that defendant would not have accepted the juror, if the challenge for cause by the state had been overruled. Moreover, defendant’s right is not to select, but to reject, a juror.
 

 Bill No. 11.
 

 The juror Olds was asked on his voir dire:
 

 “Have you not expressed your opinion that if a certain thing [were true?] the verdict in this case should be so and so?”
 

 “Yes, sir.”
 

 “If you were accepted in this case, there would only be two possible verdicts that you could render?”
 

 The state objected to the latter part of the question as improper, and the objection was sustained. The question was not answered by the juror, who stated, on examination by the court, that the expressions that he had made were not as to the guilt or innocencé of the defendant, and that he had no opinion on that question.
 

 In State v. Bennett, 14 La. Ann. 651, it was held that:
 

 “The question, if admissible, ought to have been, whether he had formed such deliberate opinion as to the nature of the punishment to be Inflicted, in the event the prisoner were found guilty, * * * that it could not be * * * •changed by the evidence.”
 

 In State v. Ward, 14 La. Ann. 673, the court said:
 

 “If the juror has not formed an opinion as to the guilt of the prisoner, it is idle to.inquire whether he has made up his mind as to the degree of punishment that should be awarded.” .
 

 In State v. Bill, 15 La. Ann. 114, the. Ward Case is reaffirmed, and State v. George, 8 Rob. 538, relied upon by defendant, is expressly overruled, upon the ground that “an opinion formed as to the punishment to be inflicted, upon a hypothetical statement as to the guilt of the accused, did not disqualify a juror.”
 

 As stated in section 448, Marr’s Criminal Jurisprudence:
 

 “In those cases in which the law leaves it to the jury to fix the penalty, the fact that the juror has made up his mind as to the punishment to be inflicted on the prisoner, in case of a verdict of. guilty, does not affec.t his competency, for, if the juror has not formed an opinion as to the guilt of the prisoner, it is idle to inquire as to his opinion upon degrees of punishment.”
 

 As the juror Olds had formed no opinion as to the guilt of the accused, the ruling of the trial judge was correct.
 

 Bill No. 13.
 

 Defendant complains in this bill that he was not allowed by the court to question the juror Olds further, after his challenge for cause had been overruled. We agree with the judge a quo that the juror was a fair juror, and that he had been examined fully as to all he had heard, read, or said about the ease. There was no reason to suppose that the juror would change his testimony on a second examination, and no notice was given by counsel for defendant that he could produce, or desired to produce, proof of the untruthfulness of the answers made by the juror on his first examination. The ruling was proper under the circumstances of the case.
 

 Bill No. 7.
 

 Defendant asked that the jury be discharged, “for the reason that the names of the.last two jurors have not been in the box¡ until the panel was exhausted, and they were only placed in the box after the panel had
 
 *695
 
 been exhausted, causing us to reserve challenges that we would not have had to reserve had their names been in the box.”
 

 The testimony taken on the motion to discharge the jury shows that two slips, containing the name of two jurors, accidentally fell from the box while the sheriff was shaking it, and that these slips, when discovered, were replaced and drawn, and that the two jurors were examined on their voir dire.
 

 There is not the slightest suggestion of fraud or ill practice in connection with the absence of the slips from the box, and no evidence was offered on the trial of the motion to discharge the jury to prove that defendant had been compelled to reserve challenges that he would not have reserved otherwise. We fail to see that any possible injury resulted from this' purely accidental circumstance. We have already held, in this opinion, that the jurors who tried defendant were fair and competent jurors.
 

 The motion to discharge the jury was properly overruled. "
 

 Bill No. 20.
 

 The trial judge, understanding that the district attorney requested that the grand jury returning the indictment in this case be polled, so ordered it, "without due deliberation on the part of the court. The bill had been returned, examined by the judge, and ordered filed, when the grand jury was polled.
 

 After the petit jury had been sworn and the first witness for the state had been placed- on the stand, defendant objected to the admission of any testimony under the indictment, on the ground that the polling of the grand jury in open court was a breach of the oath of secrecy of that body, and operated to invalidate the indictment found and returned in the case.
 

 This question is res nova in our jurisprudence,' but has been passed upon in other jurisdictions. Tn State v. Rothrock, 45 Nev. 214, 200 P. 525, the court held that: '
 

 “The provisions of our statutes relative to keeping secret the proceedings before the grand jury were not enacted for the benefit of those who were investigated and indicted by the gran$ jury, but for the protection of the public. This idea is clearly set forth by the Supreme Court of Massachusetts in Commonwealth v. Mead, 12 Gray, 167, 71 Am. Dec. 741, where it is said: ‘The reasons on which the sanction of secrecy which the common law gives to proceedings before grand juries [are] founded are said in the books to be threefold. One is that the utmost freedom of disclosure of alleged crimes and offenses by prosecutors may be secured. A second is that perjury and subornation of perjhry may be prevented by withholding the knowledge of facts testified to before the grand jury, which, if known, it would be for the interest of the accused or their confederates to attempt to disprove by procuring false testimony. The third is to conceal the fact that an indictment is found against a party, in order to avoid the danger that he may escape and elude arrest upon it, before the presentment is made. * * * But when these purposes are accomplished, the necessity and expediency of retaining the seal of secrecy are at an end. ‘Cessante ratione, cessate regula.’ ”
 

 Dwelling upon the same question, it is said by the Supreme Court of California, in People v. Young, 31 Cal. 564:
 

 “If the witnesses violated the obligation of secrecy imposed upon them by the 217th section, the defendant could not take advantage of it. The obligation is due and owing to the public, and not to the witness [defendant], and therefore its violation cannot be an occasion of offense to him.”
 

 We concur with the trial judge in the conclusion reached by him that the inadvertent polling of the grand jury in this case was a mere irregularity of procedure, without injury to the defendant, and without effect as to the validity of the indictment.
 

 Bill No. 21.
 

 It is complained by defendant in this bill that the state was permitted to introduce in evidence a bloody shirt sleeve and handkerchief, without having connected the same in any way with defendant. This item of evidence was one of several articles found at
 
 *697
 
 the supposed scene of the crime. One of the articles was a cap, proven to have belonged to the deceased. All of the articles were relevant to prove the location of the spot, in order to establish venue, and their bloody condition was a significant and relevant circumstance, although the bloody shirt and handkerchief were not identified by the state as belonging to the accused.
 

 The articles were admitted in evidence properly, and the ruling is approved.
 

 Bill No. 22.
 

 A state witness testified on direct examination that a point indicated to him by Ben Singleton, also a witness for the state, was 4% miles from the Vernon parish line; i. e., the locus was within Beauregard parish, in which the homicide had been committed. This evidence was offered to prove venue.
 

 As the point in question was established amply by the testimony of Singleton and other witnesses as the scene of the crime, the testimony of the state witness was not hearsay, as the purpose of the testimony was to show the distance from the point indicated to the Vernon parish line — a fact within the knowledge of the witness, who was an old citizen of Beauregard parish, and a timber cruiser thoroughly familiar with the land lines in that parish.
 

 The testimony was clearly legal and admissible for the purpose for which it was offered.
 

 Bill No. 23.
 

 This bill was reserved to the introduction of the confession of the accused on the ground that it was not a free and voluntary confession, but had been obtained by duress, fraud, and implied threats and promises.
 

 After reviewing the testimony in the ease, we concur in the following per curiam to this bill:
 

 “There was no evidence whatever of fraud or duress. On the contrary, every circumstance showed that the confession was freely made; that it was communicated to the assistant district attorney on the voluntary motion of defendant; that he was told in advance that he could not be forced to give it and that it would be used against him.”
 

 Bill No. 24.
 

 Defendant objected to the introduction of the confession also on the ground that the first paragraph was not dictated by the defendant, and that the balance of the confession was written in the words of the assistant district attorney, and not in those of the defendant. Defendant objects also that the confession was not in proper legal form.
 

 There is no law of this state prescribing any particular form in which a written confession shall be made. The paragraph complained of is introductory, and recites that the confession was made freely and voluntarily — a fact abundantly established aliunde by evidence in the case. While the introductory paragraph was not dictated by defendant, it was read to him by the assistant dis-' trict attorney, before defendant signed the confession, and defendant acquiesced in the statement without objection.
 

 Even in dictation of last wills and testaments, the most solemn and formal of all the legal instruments known, it is not necessary that a notary public in this state take down the language of the testator in ipsissimis verbis; the substance of the disposition being all that is required, by law, to be reduced to writing by that officer.
 

 This is the rule also in the matter of written confessions, ex necessitate rei. Any other rule would defeat, in a very large measure, the admissibility of confessions in criminal cases, as it is not practical for any witness to repeat, or to inscribe, word for word, any incriminatory statement made by a defendant unless such statement should be so brief that it may be readily recalled or written in the precise language in which it has been made.
 
 *699
 
 The confession in this case is minute in detail, and covers four typewritten pages of the transcript. That the substance of what defendant stated was taken down by the assistant district attorney is proven beyond doubt by the evidence in the case. This, in our opinion, is all that law requires to be done, in case the confession is committed to writing.
 

 The ruling admitting the confession was correct.
 

 Bill No. 25.
 

 This bill was reserved to a question propounded by the state to the witness Burrell Cooper, for the purpose of showing a conversation between Joe Genna and the witness as to the whereabouts of the deceased at a time prior to the commission of the homicide.
 

 The objection urged by defendant to this question was that the evidence was immaterial and irrelevant, and that the conversation was had out of the presence of defendant, ■and was not admissible against him.
 

 The trial judge states in the per curiam to this bill:
 

 “The defendant and Joe Genna were jointly charged with crime. It was the object of this testimony to show that Genna inquired of the whereabouts of Brevelle, the taxi driver, who subsequently took him.and the defendant to the country and was there murdered. The evidence was admissible .if this inquiry was an attemx>t to carry out a conspiracy between the two accused to ‘high-jack’ or murder the driver and steal his car. It was admitted for this purpose, and with careful instructions to the jury to consider it against the defendant only in case they found the conspiracy established, and that this was in furtherance thereof. See instructions to the jury, pp. 161, 162.”
 

 Whether a conspiracy existed between defendant and his codefdndant, Joe Genna, to murder the deceased was a question of fact which the jury had to determine ultimately, i as the judges of the facts of the case. There were no eyewitnesses to the homicide. The state necessarily had to rely upon circumstantial evidence as to proof of conspiracy. The confession of the defendant and other evidence tending to establish the conspiracy were before the jury at the time of the objection to the testimony of the witness, Cooper.
 

 As stated in Marr’s Crim. Juris. (2d Ed.) p. 848:
 

 “After all, the order of proof is discretionary with the judge, especially where establishing the conspiracy is dependent upon the proving of a number of facts and circumstances from which the conspiracy is to be inferred; and evidence' of acts and declarations may be received at any time during the trial, dependent finally for effect as evidence, under the charge of the judge, on the conspiracy being established vel non to-the satisfaction of the jury.”
 

 The jury was properly instructed in the case not to give effect to the testimony of Cooper, unless they should find by evidence already introduced, or that might thereafter be introduced, that Joe Genna and the defendant had formed a conspiracy to commit the crime with which the defendant is now charged.
 

 The law is clear that:
 

 “In cases of crime perpetrated by several persons, when once the conspiracy or combination is established, the act or declaration of one conspirator or accomplice, though not on trial with his codefendant, in the prosecution of the enterprise, is considered the act and declaration of all, and therefore imputable to all. All are deemed to assent to or command what is said or done in the furtherance of the common object, and it is, therefore, of no moment that such act was done or such declaration was made out of the presence of the conspirator sought to be bound thereby.” Marr’s Crim. Juris. § 552.
 

 We find no error in the ruling of which defendant complains.
 

 The conviction and sentence are affirmed.;