ON REHEARING
McCALEB, Justice.
We granted a rehearing in this case to permit the State to demonstrate, if it could, its claim that we erred on first hearing in holding the confessions of the four participants in the heinous crime for which they have been convicted were secured in some degree by police brutality and, therefore, were admitted in evidence against them contrary to the mandate of Section 11 of Article 1 of our Constitution that “ * * * No person under arrest shall be subjected to any treatment designed by effect on body or mind to compel confession of crime; nor shall any confession be used against any person accused of crime unless freely and voluntarily made”.
On rehearing, counsel for the State specify:
(1) That we should not have set aside the finding of the trial judge on the issue of police brutality in obtaining the confessions inasmuch as that finding is supported by the evidence and the photographs of the accused;
(2) That it was legally incorrect to reject the confessions because they were not in the form of verbatim questions and answers and thus, in effect, deny to investigating and enforcement officers the right of securing statements dictated by accused persons to police officers who take down in writing the substance of such statements, which are subsequently signed by the accused, and
(3) In holding that the time involved in obtaining the written confessions supports the conclusion that the defendants were beaten by the police.
Considering, first, the second complaint of the State, we note from a re-examination of the record that there is a conflict between defendants’ testimony and the state- *763 merits of the police officers as to whether the confessions, which were placed in narrative form, were actually given in question and answer form. We find it un-necessary to resolve this conflict for, since the substance of the confessions was recorded by Officer Dyer in narrative form and the defendants signed and made them their written act, it is immaterial whether they were dictated to the officer or given by answers to questions propounded by the police. It is true that the typewritten statements reflect, as stated in the original opinion, a strong similarity. But this is a factor of no importance for, when it is considered that the defendants were jointly engaged in perpetrating the crimes for which they were charged, the various accounts of their activities (which we think they have given, whether by duress or voluntarily) must be intrinsically the same. Hence, we are now of - the opinion that the circumstance of similarity does not warrant the implication that the defendants did not dictate the substance of the statements recorded by the officer.
Nor, on reflection, do we believe it is necessarily the better practice for 'officers, in taking down confessions of crime wherein the accused gives his answers to questions propounded by the investigator, to inscribe verbatim the questions asked and answers ■ given thereto as the confession of the accused. While this form-is. permitted by Article 453 of the Code of Crim-: inal Procedure (R.S. 15:453), it is not obligatory. The jurisprudence of this Court is that written confessions need not be in the exact language of the accused; they are sufficient if the substance of the oral statement is recorded. State v. Brasseaux, 163 La. 686, 112 So. 650; State v. Kennedy, 232 La. 755, 95 So.2d 301 and State v. Domino, 234 La. 950, 102 So.2d 227.
Albeit we have no doubt that the defendants gave the confessions recorded by Officer Dyer, this finding furnishes no answer to the serious question presented in the case, i. e., whether these confessions and other oral inculpatory statements, or any one or more of them, were induced in some measure through cruel treatment administered by the police on the persons of the defendants.
Pretermitting, for the moment, discussion of the State’s contention of error in our prior holding as to admissibility vel non of the confessions, we address our attention to the third complaint of the State— that we erred in holding that the time element involved in reducing each of the four short confessions to writing supports our conclusion that the defendants were beaten by the police.
We find little substance in the contention. Two of the defendants, Carter and Henry Baptiste, are shown by the evidence to have been steadfastly adamant to police questioning when they were first arrested and did not admit participation in *765 the crime until they were taken at 4:20 a. m. on the morning of November 19, 1961, to the Detective Bureau where, according to their testimony, after being confronted repeatedly with the statements of their co-defendants and being beaten, they gave their confessions. The fact then that it took 40 minutes from the time Carter began dictating his confession to the time he signed it, and an hour and thirty minutes in the case of Henry Baptiste, are circumstances (when considered in connection with the fact that Ruth’s confession was completed in ‘only 20 minutes) which tend tp support the conclusion on first hearing that the confessions were not entirely free and voluntary. In any event, the time element involved in the completion of these confessions was but a minor factor in the result heretofore reached. Our decision was primarily based on the defense testimony of brutal treatment which we found believable because it was corroborated by physical and other credible evidence.
On the main question in this case, i. e., whether the confessions and oral statements of the defendants emanated in any degree from corporal punishment administered by the police, we have re-examined the voluminous testimony and exhibits submitted by the State and the defendants with care. The result of our reconsideration has served only to strengthen our conviction that the State has not only failed to show by evidence which convinces us beyond .'a reasonable doubt that the confessions were free and voluntary but that, on the contrary, the statements of the defendants and their witnesses that they were beaten clearly preponderates over the categorical denials of the 16 officers testifying for the State. We reluctantly come to this conclusion, as stated in our original opinion, in view of the direct and circumstantial evidence which clearly establishes the guilt of all the defendants of barbarous and fiendish criminal acts upon two defenseless peopie. But the law respecting the use of confessions protects the guilty as well as the innocent and we are still persuaded that, in the light of the physical and other overwhelming evidence which supports the testimony of these defendants, the confessions have not been shown by the believable evidence to have been made free from influence, fear,, duress, intimidation, menaces and threats. The reasons stated in our original opinion are so clearly and cogently expressed that further comment at this time would be superfluous. It suffices, we think, that we dispose briefly of the argument of counsel for the State that our holding on first hearing is erroneous.
In assailing our opinion, counsel contend in essence that we have not accorded sufficient weight to the findings of the trial judge and that, since the judge saw and heard all the witnesses and was in a better position than we are to determine the credibility of their statements, we should not *767 disturb his ruling that the State has shown beyond a reasonable doubt that the defendants were not beaten or intimidated in any degree.
The argument is not well founded. On first hearing, we did accord to the per curiams of the trial judge as much weight as was possible under the facts, but we found that the reasons given for the judge’s rulings were not sustained by the preponderating believable evidence. Initially it was our view — and a re-examination of all photographs offered in evidence confirm that view — that the Bureau of Identification pictures taken of the defendants a few hours after the crimes were committed and those taken of them during their re-enactment of the Cilmes at 8:00 o’clock on the same morning (including those of Henry Baptiste which were taken on November 22, 1961) clearly exhibit that Carter and Henry Baptiste had swollen lumps on their heads and faces. This in itself, in our opinion, weakens the credibility of the officers’ testimony. In these circumstances, we cánnot follow the argument of counsel for the State when they say that, because the judge was able to compare the pictures of the defendants with the living specimens who sat in front of him during the trial, his conclusion that the photographs showed no evidence of beating or ill treatment must be accepted.
Nor do we find substance in counsel’s contention that the defense attorneys should have had the defendants photographed at or during the trial, so that the later pictures could be compared with the earlier photographs of the Bureau of Identification in support of the defendants’ testimony that they were beaten. In making this argument, counsel overlook the provisions of the law that the burden is always on the State to show that a confession is free and voluntary. Hence, the shoe was on the other foot — the State should have produced pictures of the defendants as of the date of trial. Moreover, it is of some significance that the judge does not state in his per curiam that the physical condition of the defendants’ heads and faces at the time of trial, with relation to the bumps and swelling clearly visible in the photographs, was substantially the same and that the facial disfigurement was due to protuberance of some sort disconnected with trauma.[1]
In addition, as pointed out on first hearing, the credibility of the evidence of the police officers[2] is adversely affected by their weak and unsatisfactory denials *769 that visitation rights were not accorded to the families and advisors of the defendants, despite the overwhelming evidence to the contrary. Indeed, we find it strange that counsel for the State have chosen on this rehearing to ignore discussion of this phase of the case particularly since our holding was based in part on this circumstance.
Finally, it appears to be the main theme of counsel for the State that, since the defendants were apprehended within less than an hour after they committed their violent crimes “ * * * while they still had fresh blood and/or seminal fluid on their shoes and clothing; before they had had time to think objectively about what they had done to the Sandifurs that night, get rid of the incriminating stains on their clothes, and establish credible alibis; * * * ”, they were not in any position to successfully maintain their innocence and, therefore, readily confessed to the police officers voluntarily. From this premise, counsel ask the question “What reason or motive, then, would the police officers have had for beating confessions of guilt out of the four arrested youths in the instant case ?” and they answer the question “Absolutely none”. It is then submitted that this is the logical reason for this Court to hold that defendants were not beaten.
We cannot sustain this argument. In the first place, it is founded more on speculation than fact. Furthermore, we find its logic faulty. For, while we agree with counsel that the police may have obtained voluntary confessions at some time during the investigation if restraint had been exercised, we are not so sure that the officers, after viewing the battered faces and unsightly bodies of the victims of these crimes, and having apprehended within less than an hour the culprits who had committed such inhuman acts of mayhem and rape, were not in such a mental state of revulsion and resentment that they were able to resist the administration of corporal punishment upon the guilty parties, especially so, when those accused when at first apprehended denied connection with the affair in spite of the clear physical evidence of guilt as shown by the blood stains on their persons. Under such circumstances, these officers, being normal human beings, might have done exactly what the defendants say they did. At any rate, we think the evidence suggests that the defendants were “roughed up” to some extent; it is *771 certain and proper that they were not accorded “kid glove” treatment Yet, because of this, as we have stated above, the confessions cannot stand the test of admissibility prescribed by law. Accordingly, the guilt of these defendants must be established by other evidence and not out of their own mouths.
For the reasons assigned, our original opinion, as herein modified, and decreed is reinstated as the final judgment on this appeal.
SANDERS, J., dissents.
ON REHEARING
FOURNET, Chief Justice
(concurring).
I am in full accord with the conclusion in the majority opinion on rehearing that the state “has not only failed to show by evidence which convinces us beyond a reasonable doubt that the confessions were free and voluntary but that, on the contrary, the statements of the defendants and their witnesses that they were beaten clearly preponderates over the categorical denials of the 16 officers testifying for the State,” and consequently, that the admission of these confessions ih evidence constitutes reversible error.
However, I cannot understand how anyone reading the prevailing opinion on original hearing in this case could possibly eke out' from any language' used therein, ás contended by .the .state, and on which, the majority here apparently places reliance, that (1) it is authority for the proposition the confessions of the several defendants were rejected because “they were not in the form of verbatim questions and answers,” or (2) that the length of time involved in preparing these so-called confessions for signature “supports the conclusion that the defendants were beaten by the police.”
The confessions were rejected and declared inadmissible in evidence in this case on original hearing for the reason stated in the majority on rehearing, as hereinabove set out, and not because the police officer failed to report the questions and answers verbatim. The original opinion merely pointed out that the testimony of Detective O’Donnell, the only officer testifying as to the manner in which the confessions were reduced to writing “when studied and analyzed, * * * strongly corroborates the fact that Dyer [the officer typing the confessions] simply wrote out a summation of the answers given by each defendant to the questions put to him,” thus supporting the contention made by each defendant that he had not dictated the confessions as written, and it was with reference to this that the very next paragraph declares: J“We think the time element involved in reducing each of the four short confessions to writing speaks eloquently in support of our conclusion.” (The brackets have been suDplied.)
*773 I am also in full accord with, the majority view here that the method of securing confessions through questions and answers is permitted by Article 453 of the Code of Criminal Procedure (R.S. ISHSS),[1] but I feel it most unfortunate the author of this opinion saw fit to state it is not "necessarily the better practice” to report a confession verbatim when the accused answers questions propounded to him.
Certainly if there were a conflict as to the meaning of expressions contained in the confession, or with respect to the inclusion or exclusion of some material statement of fact, we, as a reviewing tribunal, would be in a better position to resolve such conflict if the confession is reported verbatim in case the question and answer method is used, “so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford.” R.S. 15 :450.
It is the well settled jurisprudence of this state that a confession of an accused cannot be divided for or against him, hence the requirement that “Every confession, admission or declaration sought to be used against any one must be used in its entirety.” R.S. 15:450. Sound reason and logic therefore dictate that whenever a confession is reduced to writing, convenience permitting, it should be reported as taken, whether dictated or in question and answer form.
ON REHEARING
HAMITER, Justice (dissenting).
Originally, I subscribed to this court’s conclusion that the confessions and oral statements of the defendants were inadmissible because they were given as a result of force and coercion practiced by the police officers on duty at the time.
However, after my having reconsidered the voluminous record containing the irreconcilably conflicting testimony and the exhibits (particularly the numerous photographs on which the holdings of the ma-. jority opinions herein are largely based), and after my having given due weight to the findings of fact of the trial judge supporting his rulings which must be done, I am now convinced beyond a reasonable doubt that such confessions and oral statements were freely and voluntarily given by the defendants and were therefore properly admitted in evidence.
Accordingly, I respectfully dissent.
ON REHEARING
SUMMERS, Justice (dissenting).
Setting aside these convictions by this court is based primarily upon a finding that the confessions of the accused were not free and voluntary because they were induced by cruel treatment. The evidence of cruel treatment relied upon is mainly *775 the testimony of the accused, which this court finds to be credible in spite of the testimony of the police officers to the contrary.
The opinion on rehearing says nothing which strengthens the original opinion on this vital issue. It relies upon generalizations and broad conclusions to reach its result. It points out no evidence which would warrant upsetting the finding of fact by the trial judge.
And no reason is given for accepting the testimony of these accused as credible; whereas every compelling reason exists in the very nature of things to reject their credibility: Their interest in the outcome of the prosecution — their lives being at stake; the evidence of blood and semen found on their clothes considered in connection with the atrocious crime which had without doubt been committed; their presence near the scene of the crime; the testimony of the victim’s husband that there were four Negro men (two tall and two short) involved, which fits the descriptions of the accused, and the numerous other circumstances pointing to them as the perpetrators of the crimes charged beyond any reasonable doubt.
Weighed against their testimony that they were compelled to confess by force is the testimony of 16 law officers to the contrary, which this court rejects. There-*, is no reason, other than unfounded suspicion, to conclude that these law officers had any interest in the outcome of the prosecution which would affect their credibility.
It is my opinion that a great injustice has been done to the great body of law abiding citizens of this state in setting aside the convictions of these accused.
I adhere to my original dissent.

. With respect to the photographs, we note that, in a picture taken of Henry Baptiste and Ruth at 8:00 a. m. on the date1 of the crime, Henry’s right hand is visibly swollen. This physical evidence coincides with Henry’s testimony that one of the officers attempted to kick Mm in Ms “privates” and, in shielding himself, he was kicked in the hands.

. In connection with the testimony of the police officers, we think it apt to observe that, whereas they are consistent in their denials that any of the defendants were *769 beaten while they were present, in some instances the officers state under cross-examination, when asked specific questions about corporal punishment, that they do not remember or recall that any threats were made or physical force used. For example, Detective O’Donnell, the main witness for the State in laying the foundation for the admission of the confessions, when asked on cross-examination if he had hit Henry Baptiste on the head with a flashlight at the scene when he was examining Henry’s shoes in the police ear, answered: “I don’t remember hitting him, no sir.”

. This article provides: “A confession need not be the spontaneous act of the accused and may be obtained by means of questions and answers.”