204 So.2d 370

STATE of Louisiana

v.

William SKINNER, August R. Gueldner and Alton J. Charbonnet.

No. 48445.

June 5, 1967.

On Rehearing Nov. 6, 1967.

Rehearing Denied Dec. 11, 1967.

Robert S. Link, Jr., G. Wray Gill, Sr., George M. Leppert, New Orleans, for appellants.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for appellee.

HAMITER, Justice.

William Skinner, August R. Gueldner and Alton J. Charbonnet were jointly charged in a bill of information, in two counts, with the illegal possession and sale of a narcotic drug (marijuana) on May 21, 1965. Following a trial before a jury of twelve they were found guilty as charged on both counts. Thereafter, each was sentenced to a lengthy term at hard labor in the state penitentiary.

Thirty-five bills of exceptions reserved during the course of the proceedings were perfected. However, in this court defendants rely on only fifteen of them, some of which involve the same issues.

One of the bills principally relied on, and which we think is meritorious, is that taken to the overruling of defendants' objection to the trial judge's general charge to the jury. It is numbered 29.

The charge contained, as the state concedes, a full statement relative to the law of conspiracy. With reference to this subject the judge observed:

## "CONSPIRACY

"I charge you, gentlemen of the Jury, that a criminal conspiracy is defined to be a combination or agreement between two or more persons to do a criminal or unlawful act, or to do a lawful act by criminal or unlawful means. It has been said that a criminal conspiracy is a partnership in criminal purposes.

"The term conspiracy imports an agreement, but the agreement need not be a formal one. It is not necessary, to constitute a conspiracy that two or more persons should meet together, and enter into an explicit or formal agreement for an unlawful scheme, or that they should directly, by words, or in writing, state what the unlawful scheme is to be, and the details of the plan, or means, by which the unlawful combination is to be made effective. It is sufficient if two or more persons, in any manner, or through any contrivance, positively or tacitly come to a mutual understanding to accomplish a common and unlawful design.

"Conspiracies to commit crime can be established as well by circumstantial evidence as by direct evidence.

"The weight and sufficiency of the evidence to prove a criminal conspiracy is a matter for the jury, and so is the existence of the conspiracy.

"A conspiracy may, and generally must, be proved by circumstantial evidence, and

if the circumstances tend to prove it, it is for the jury to determine whether they are consistent with the reasonable hypotheses of innocence. It is not necessary to sustain proof of a conspiracy to show that the parties made and actually agreed jointly to undertake the perpetration of a criminal act; that fact may be proved by circumstantial evidence sufficient to satisfy the jury of its existence.

*"No person can be held guilty unless the act is either actually or constructively his;* and it cannot be his, in either sense, unless committed by his own hand or by someone acting in concert with him, or in furtherance of a common object or purpose, as distinguished from someone acting independently or in opposition to him.

"The rule for criminal responsibility for acts of others done in prosecution of an unlawful object is subject to the limitation that the particular act of one of a party; for which the associates and confederates are to be held liable, must have been shown to have been done for the furtherance, or in the prosecution of, the common object and design for which they are combined together. There can be no criminal responsibility on the part of a conspirator resulting from something not fairly within the common enterprise.

*"When two or more persons enter upon a common enterprise or adventure which contemplates the commission of a criminal*

*offense, each is a conspirator, and his criminal responsibility extends not alone to the enterprise, adventure or encounter in which the conspirators are engaged but takes in the proximate natural and logical consequences of such adventure.*

*"When a conspiracy is entered into to do an unlawful act, all persons engaged therein are responsible for all that is done in pursuance thereof by any of their conspirators, until the object for which the conspiracy was entered into is fully accomplished.*

*"This responsibility is not confined to the accomplishment of the common design for which the conspiracy was entered into, but it extends to, and includes, collateral acts and incidental and growing out of the common design.*

"It is for you to determine, gentlemen, as a matter of fact, from all of the evidence submitted to you, whether or not a conspiracy has been established, beyond a reasonable doubt, and that the defendants on trial were engaged in the said conspiracy.

"Unless you are satisfied that a conspiracy has been established I charge you that the acts and declarations of one of the parties to the alleged conspiracy do not bind the other." (Italics ours.)

In his per curiam to bill No. 29 the judge, in justifying his observations, notes only that "The defendants did not point out wherein the above charges given to the jury was not the law and the Court is at a loss to understand why the defendants objected thereto."

However, such bill, which contains the pertinent portion of the transcript, shows that following the charge defense counsel objected thusly: "I respectfully object to Your Honor's charge on conspiracy, *both as to its tenor and applicability in this case."*

This language was clearly sufficient to put the court on notice that the objection was made to the relevancy of the charge on conspiracy, the defendants having been accused of committing specific illegal acts and not with *a conspiracy* to commit them.

In State v. Gunter et al., 208 La. 694, 23 So.2d 305, one of the three accused charged jointly with simple kidnapping had pleaded guilty and was a witness for the state. On the trial of the others, one had requested special charges on the law of conspiracy which recited: " 'I charge you, gentlemen of the jury, that mere cognizance of fraudulent or illegal action does not constitute a conspiracy, but there must be shown active participation by the parties charged.

" ' * * *

" 'That when the common enterprise is abandoned by one of the conspirators, that no other conspirator by his acts or actions is permitted to affect the others.'

" 'That in order for the acts and declarations of a conspirator to be admissible against a co-conspirator, the State must prove that the conspiracy is formed or existed and that the accused against whom it is sought to employ such evidence was connected with such conspiracy and crime charged.

" 'That the admissibility of the acts and declarations of the co-conspirators against other members of the conspiracy is limited to those acts and declarations which are pursuant to and in furtherance of the unlawful combination or crime charged.' "

The trial judge refused to so charge. And on appeal to this court, following conviction, we observed: "Under Article 26 of the Criminal Code, conspiracy is a separate and distinct offense from the completed crime. So much is this the case that a conviction for conspiracy will not bar a conviction for the completed crime and vice versa.

"As stated by the judge in his per curiam, under Article 24 of the Criminal Code, all persons concerned in the commission of a crime are regarded as principals. The defendants in this case were jointly charged with the offense of simple kidnapping under Article 45 of the Criminal Code. They were charged as principals and not as conspirators. * * *

"The judge gave his charge to the jury in writing, but he did not give to the jury the special charges requested by the defendant. The judge assigns as his reason for refusing to give the special charges. that they were covered in part by his. general charge *and were otherwise not applicable to the facts in the case. His ruling was correct. Since the defendants were not charged and prosecuted for conspiring to commit the offense of simple kidnapping, but were charged and prosecuted for the basic offense of simple kidnapping, the instructions requested by defendant relative to conspiracy were not applicable to the case.* * * *" (Italics. ours)

Also pertinent here is State v. Fletcher,. 236 La. 40, 106 So.2d 709 in which we said:: "The request to include a statement concerning the law of conspiracy in the general charge *was likewise properly denied as being irrelevant. Appellant was charged with the substantive offense of possessing narcotics and not with the separate and distinct crime of a conspiracy to possess them, which is composed of different elements.*" (Italics ours)

In its original brief, and in several supplemental briefs filed following oral argument of the case, the state has cited (in support of its contention that the detailed charge on the substantive law of conspiracy was proper) the following cases: State v. Gebbia et al., 121 La. 1083,. 47 So. 32, State v. Brasseaux, 163 La. 686,. 112 So. 650, State v. Robichaux, 165 La.

497, 115 So. 728, State v. Taylor, 173 La. 1010, 139 So. 463, State v. Terrell, 175 La. 758, 144 So. 488, State v. Gunter, 180 La. 145, 156 So. 203, and State v. Melerine, 236 La. 929, 109 So.2d. 471.

We note initially that all of these decisions except State v. Melerine, supra, were rendered prior to the last Gunter and the Fletcher cases heretofore discussed, the latter two being the latest expressions of this court specifically on the subject.

Moreover, all of the decisions cited by the state, except the Terrell and Taylor cases, supra, related only to the admissibility and probative effect of hearsay evidence as between codefendants. In each the defendants objected to the court's admitting testimony of conversations (which tended to connect them with the crime charged) between third persons and a co-accused. The basis of the objection was that the prejudicial evidence was hearsay as to the defendants who were not present when the conversations occurred. We held that such conversations (which ordinarily would be objectionable under the hearsay rule) were admissible and could be considered against all defendants if it be proved by the state that a conspiracy existed to commit the crime with which the defendants were jointly charged (or as against such of them as were shown to have been involved in the conspiracy).

In most of the opinions we noted that the trial judge cautioned the jurors that the admitted evidence could be considered as to all of the defendants only if they found that the statements were made during the existence of a conspiracy. But in none does it appear that a full statement of the substantive law of conspiracy was included in the general charge, such as occurred herein. (In the Robichaux case the statements were limited to the defendant present, because they were made after the crime had been committed and hence after the termination of the conspiracy. In the Gebbia opinion we noted that the district judge in his general charge had made a short statement, which we quoted, concerning the law of conspiracy. However, we did not pass on the propriety of his doing so nor on the correctness of his remarks, we observing that no bill of exceptions was reserved to the charge or the court's refusal to charge.)

In State v. Taylor, supra, four defendants were accused of murder, the charge against three of them being founded on the murder-felony doctrine. The alleged murder occurred *after* (not during) the commission of the felony (an armed robbery), at a time when the participants in the robbery had separated and while the defendant who actually did the killing was some distance from the scene of the felony attempting to make good his escape therefrom. A careful reading of the charge given by the trial judge discloses that it was really not a dissertation on the general law of conspiracy,

and that it was not objected to as such. Rather, it was an instruction on the felony-murder doctrine as it applied to the particular facts of that case—to what extent each participant in the felony was responsible for a killing occurring as a result of the commission of a felony and as to how long the responsibility endured. We discussed only the questions of whether the law as stated in the general charge was correct or whether the law was as stated in special charges requested by the defendants.

As our opinion in the Taylor case reflects, since the killing involved therein occurred *after* the completion of the robbery, and away from its scene, the legal responsibility of the robbery participants for such killing depended on their being parties to conspiracy to commit the robbery, the commission of the robbery by them, and the fact that the conspiracy agreement contemplated that it would endure until the booty therefrom had been distributed. And the state was required to prove these facts in order to establish their guilt of the crime charged. Consequently, the court's charge was not merely an abstract proposition of the law of conspiracy. To the contrary, it constituted an instruction on the essential elements of the crime of murder under the murder-felony doctrine (under which three of the defendants were being tried) as applicable to the facts of that particular case.

Furthermore, our opinion in such case makes it clear that the contention of the defendants was not that any charge involving conspiracy was inapplicable, but that the substance of the charge was erroneous. Indeed, the defendants had prepared and submitted lengthy special instructions on the entire subject matter (which are quoted in the opinion) to the effect that under such circumstances no guilt would attach to the participants, or co-conspirators, if the killing occurred out of their presence *after the completion of the robbery* and away from the scene thereof. In fact, the issues were presented to us (not on an objection to the judge's charge) in a bill taken to the court's refusal to give the special charges requested by defendants.

State v. Terrell, supra, presented an issue similar to that considered in State v. Taylor, supra. Some of the defendants had been tried for murder under the felony-murder doctrine, the killing having occurred *after* the completion of the initial illegal act (armed robbery) and not in the presence of all of the defendants. The judge gave the almost identical charge as was given in the Taylor case. (The author of the opinion refers the reader to the latter case for a full text of the charge.) Reference to the briefs in that case show that, as in the Taylor matter, the complaint of the defendants was that the charge was not substantively correct. Far from urging that no charge involving conspiracy could be given,

one of the defendants, Mose Conner, urged that "The charge on the law of conspiracy was *insufficient* * * *." Also, it appears that all defendants themselves requested their own charges on conspiracy.

In any event in the Terrell case, similarly as in the Taylor prosecution, the occurrence and extent of the conspiracy to commit the robbery were essential substantive elements of the murder accusation as it related to those not present when the killing occurred and, hence, required explanation to the jury. In both cases the instructions appeared in that portion of the general charge dealing with who were "PRINCIPALS", and not (as here) as a separate instruction on "CONSPIRACY."

The Taylor and Terrell cases, therefore, are clearly distinguishable from the instant matter wherein proof of an agreement, or conspiracy, to possess or sell narcotics was *not an essential, substantive, element of the* crime, it being necessary only that the state show that each *aided or abetted* in the commission of the said illegal acts (LRS 14:24), albeit proof of a conspiracy could be shown during the trial in order to render admissible as to more than one defendant evidence connecting them with the particular crime charged, which proof might otherwise be inadmissible under the hearsay rule.

The state herein, in a supplemental brief, has also cited LRS 15:455 in support of the propriety of the judge's charge

on conspiracy. But that article in no way affects the substantive law. Its purpose and intent is solely to provide for *regulating the effect of evidence* as between co-conspirators during the existence of the conspiracy. The article in no manner affects their guilt or innocence, and it does not require proof of a conspiracy for conviction of the illegal acts charged. State v. Rodosta, 173 La. 623, 138 So. 124 and State v. Clement, 194 La. 395, 193 So. 685. Therefore, when such evidence is admitted over the objection of one or more defendants that it is hearsay as to them, the judge, under the provisions of this article, may then caution the jury as to its effect among the accused. But the article clearly does not warrant a separate and independent instruction in the general charge on the entire substantive law of conspiracy, such as was given herein.

We conclude, therefore, that the conspiracy portion of the charge complained of in bill No. 29 constituted an abstract, inapplicable discourse on the law on that subject and was improper.

We further conclude that such charge was prejudicial to these defendants. (Incidentally, nowhere in any of the state's several briefs is it argued that the charge was not prejudicial.)

As stated in "Underhill's Criminal Evidence, 4th Edition, page 310, Section 180, "The large majority of persons of average intelligence are untrained in logical methods

of thinking, and are therefore prone to draw illogical and incorrect inferences, and conclusions without adequate foundation. From such persons jurors are selected. * * *" Because the jury is made up of lay persons, uninformed as to legal distinctions, we think that a detailed substantive statement as to the law of conspiracy might easily have led to believe that they could properly return a verdict of "guilty as charged" if they found only that a conspiracy existed among the defendants. (Particularly is this true in view of the court's admonition that "it is for you to determine, gentlemen, as a matter of fact, from all of the evidence submitted to you, whether or not a conspiracy has been established, * * * and that the defendants on trial were engaged in the said conspiracy.")

In this connection we note that the state's chief witness, an undercover agent named Fullington, had testified that he had made the contact to obtain the drug through Skinner at about 11:00 o'clock of the morning of May 21, 1965 (the date of the crime charged), at Skinner's Motor Mart; and that the sale and delivery was consummated that night with Charbonnet. Also, the court permitted the state to introduce evidence of the commission of similar offenses *at a later date* to show system and intent as to all defendants, which evidence consisted of conversations and acts not carried on in the presence of all defendants and occurring

after the commission of the crime charged— that is, as shown by the per curiam, after the conspiracy proved by the state had ended. (The evidence was allowed, although as to at least one of those occasions two of the defendants objected because it was out of their presence. See bill of exceptions No. 19.)

The record reflects serious discrepancies between important portions of Fullington's testimony given during the trial and at a previous preliminary hearing. Moreover, a disinterested witness for the defense testified positively (contrary to Fullington's testimony) that, in connection with the purchase and acceptance of an automobile from Skinner, she was on Skinner's Motor Mart lot and in his office from 9:00 in the morning of May 21, 1965 (the date of the crime charged) until 2:30 that afternoon and that only Gueldner was there in the morning—that Skinner did not come until 1:00 p. m. o'clock—and that Fullington was not there at all while she was present.

In view of this serious conflict in the testimony, as well as the discrepancies in Fullington's statements, it is quite probable that the jurors could not find without a doubt that the crime charged in the bill of information actually occurred; but that they did believe from all of the evidence, including the proof of the later offenses, that the defendants were at least involved in a conspiracy; and hence that they (the jurors) returned their mentioned verdict,

being under the impression (because of the judge's erroneous admonition) that they could find the defendants guilty as charged if they concluded only that such a conspiracy existed.

It is, of course, impossible to discover and state exactly what prompted the verdict. But when such a strong likelihood exists that the jury's decision might well have been influenced by improper procedure, as here, we must hold that the error complained of in bill No. 29 was prejudicial to the defendants.

Because of this holding we deem it unnecessary to consider the other bills of exceptions. The errors complained of in them will not likely occur in retrial of the case.

For the reasons assigned the convictions and sentences are annulled and set aside, and the case is remanded for a new trial.

SANDERS, Justice (dissenting).

The Court has reversed because the trial judge gave the jury an instruction as to conspiracy in a trial of three defendants for the illegal possession and sale of a narcotic drug. I dissent.

It is well settled that when multiple defendants are charged with a substantive offense, evidence is admissible at the trial of a conspiracy to commit the crime charged. State v. Robichaux, 165 La. 497, 115 So. 728; State v. Gebbia, 121 La. 1083, 47 So. 32; State v. Ford, 37 La.Ann. 443; 16 Am.Jur.2d Evidence, § 37, p. 147; Annotation, 66 A.L.R. 1311.

When such evidence has been offered, the Court may properly give an instruction to the jury pertaining to conspiracy between the defendants, although the indictment or bill of information does not charge conspiracy. State v. Terrell, 175 La. 758, 144 So. 488; 53 Am.Jur., Trial, § 673, p. 519; Annotation, 66 A.L.R. 1311, 1314; 2 Marr's Criminal Jurisprudence (2d ed. 1923) p. 848. See also State v. Taylor, 173 La. 1010, 139 So. 463, and State v. Brasseaux, 163 La. 686, 112 So. 650.

The rule applicable here is correctly stated in 53 Am.Jur., Trial, § 673, p. 519 as follows:

"[W]here there is evidence that the defendants had entered into a conspiracy to commit the crime charged, an instruction on the law of conspiracy is proper, and this, even though the indictment or information may not charge a conspiracy."

Contrary to the majority, I am of the opinion that the holding of State v. Terrell, supra, supports the above rule. See also State v. Capaci, 179 La. 462, 154 So. 419. On the other hand, State v. Gunter, 208 La. 694, 23 So.2d 305 and State v. Fletcher, 236 La. 40, 106 So.2d 709, relied on by the majority, hold only that the trial judge committed no error in refusing to give conspiracy instructions in those cases. Hence,

the cases provide no authority for the present decision. See, in this connection, State v. Kolafa, 291 Mo. 340, 236 S.W. 302.

I am unable to subscribe to the view that the conspiracy instruction is an "abstract, inapplicable discourse on the law." In the concluding paragraph of the instruction, the trial judge clearly defined its purpose, that of determining whether one defendant's acts and declarations bound the others. As I see it, the purpose is a valid one in this prosecution.

For the reasons assigned, I respectfully dissent.

HAWTHORNE, Justice (dissenting).

I do not agree with the holding of the majority that the trial judge erred · in charging the jury on the law of conspiracy. In fact, I think he was required to do so.

We are here dealing with a bill of information against three defendants, Skinner, Gueldner, and Charbonnet, for possession and sale of a narcotic drug (marihuana). It is well settled under the jurisprudence of this court that where an indictment charges that the crime was committed by two or more persons, such an indictment necessarily involves a conspiracy. State v. Ford, 37 La.Ann. 443, 459 (six defendants charged with murder); State v. Gebbia, 121 La. 1083, 1104, 47 So. 32 (two defendants charged with murder); State v. Dundas, 168 La. 95, 104, 121 So.

586 (two defendants charged with stealing cattle); State v. Gunter, 180 La. 145, 151, 156 So. 203 (two defendants charged with murder); see also State v. Brasseaux, 163 La. 686, 112 So. 650. To say that an indictment charging two or more persons with a crime involves a conspiracy does not mean that the jury may return a verdict of guilty of conspiring to commit the crime charged. What this means is that evidence of a conspiracy may be admitted without a formal allegation of conspiracy. State v. Ford, supra.

In the instant case the State offered evidence seeking to prove a conspiracy, as was entirely proper under the authorities cited above. The trial judge tells us in one of his per curiams: "The State had already established that the three defendants on trial had conspired together to sell marijuana to Officer Fullington on May 21, 1965 [the date the offense was charged as having been committed]."

In charging the jury on the law of conspiracy in the present case the trial judge was following a mandate of our law, and had he failed so to charge, the defendants in this case would have had legal cause for complaint. That mandate reads: "The judge shall charge the jury on the law applicable to the case and shall charge the jury that it is their duty to accept and to apply the law as laid down for them by the judge." Former R.S. 15:385; C.Cr.P. Art. 802. This court has held that under

this mandate "the judge is required to cover every phase of the case *supported by evidence* whether or not accepted by him as true. Moreover, although a judge in a criminal case is not required to charge on an issue not presented on the evidence, he should give such instructions as are pertinent to the evidence". (Italics ours.) State v. Youngblood, 235 La. 1087, 106 So. 2d 689; State v. Tucker, 38 La.Ann. 536; State v. Short, 120 La. 187, 45 So. 98; State v. Robichaux, 165 La. 497, 115 So. 728.

In State v. Capaci, 179 La. 462, 154 So. 419, two persons were indicted for murder. They were tried separately, and each was found guilty of murder. On the appeal of the defendant Capaci this court said: "The complaint that defendant was prejudiced because the court reiterated in the charge the phases of the law dealing with conspiracy is, in our opinion, frivolous. *It was the duty of the court to charge the jury fully as to the law of conspiracy in this case,* as the defendant is jointly charged with his codefendant for murder, and the indictment necessarily involves conspiracy. * * *" (Italics ours.) In support of this holding the court cited State v. Ford and State v. Gebbia, both of which I have cited above.

In State v. Terrell, 175 La. 758, 144 So. 488, three defendants, indicted for murder, were found guilty and sentenced to death. In that case, as in this one, the objection was made that it was error for the judge to give instructions on the law of conspiracy since the defendants were charged with murder and not with conspiracy. The holding of this court was that the indictment which charged the several defendants with the crime of murder involved also a conspiracy, that evidence of conspiracy was properly introduced and that it was proper for the judge to give instructions on the law of conspiracy.[1]

Not only is it the law of this state that the trial judge shall instruct the jury on the law applicable to the evidence adduced, but it is the law which prevails throughout the United States. Corpus Juris Secundum states the applicable rule as follows:

" * * * As a general rule, the court should instruct on every essential question in the case so as properly to advise the jury of the issues * * *.

* * * * * *

"Ordinarily, the court should instruct the jury on every principle of law applicable, and submit every question or issue suggested by the evidence, whether offered by the prosecution or by accused, or by both; and it is immaterial whether the jury would accept the evidence as true or in what light it was regarded by the trial

---

1. Evidence of a conspiracy was admitted in both the Capaci and the Terrell cases.

judge. * * *" 23A C.J.S. Criminal Law § 1190, pp. 474–476.

Specifically, where there is evidence of a conspiracy (as there was here), Corpus Juris Secundum gives the rule thus: "Where there is evidence relating to conspiracy in committing the offense, an instruction as to such law is proper * * *." Op.cit. supra, sec. 1287, at p. 692. As authority for this statement cases are cited from Alabama, California, Colorado, Georgia, Kentucky, Michigan, Missouri, and Texas; and so far as I can ascertain, there is no case to the contrary.

R.S. 15:455 provides:

"Each coconspirator is deemed to assent to or to commend whatever is said or done in furtherance of the common enterprise, and it is therefore of no moment that such act was done or such declaration was made out of the presence of the conspirator sought to be bound thereby, or whether the conspirator doing such act or making such declaration be or be not on trial with his codefendant. But to have this effect a prima face case of conspiracy must have been established."

Ultimately the question of whether a conspiracy has been established is a question of fact for the jury, but the jury must be instructed on the law of conspiracy so that this law may be properly applied once the jury has made a determination on the question of fact: Thus, if the jury finds

that a conspiracy existed and that the defendant or defendants on trial were engaged in it, the jury is free to give such weight as it thinks proper to the evidence of acts and declarations of the codefendants out of the presence of one another in furtherance of the common enterprise. If, on the other hand, the jury finds that a conspiracy has not been established, such evidence should not be considered to the prejudice of the accused. State v. Gebbia, supra. It can thus be readily seen how the failure of the judge to charge the law of conspiracy may prove prejudicial, for the jury must be instructed that unless a conspiracy has been established, the acts and declarations of one defendant do not bind the other defendants. State v. Bolden, 109 La. 484, 33 So. 571; State v. Gebbia, supra; State v. Lebleu, 137 La. 1007, 69 So. 808; State v. Brasseaux, supra.

There can be no question that when evidence is adduced of, for instance, flight of the defendant or alibi or self-defense or intoxication, it would be the duty of the trial judge to charge the law applicable to flight or alibi or self-defense or intoxication, and it would be error for him not to do so. I do not understand why the majority opinion here puts conspiracy in a different category from these other matters of which the judge is required to charge the law if evidence of them is adduced. Under former R.S. 15:385, and under Article 802 of the present Code of Criminal Procedure,

the judge is required to charge the law applicable to the case, yet under the majority holding in this case, even though evidence of conspiracy is adduced and the law of conspiracy is therefore applicable, the judge will commit reversible error if he charges the law of conspiracy. In short, the statutory law requires the judge to charge the law of conspiracy when there is evidence of conspiracy, and the latest expression from this court says he must not.

The defense relies on two cases, State v. Gunter, 208 La. 694, 23 So.2d 305, and State v. Fletcher, 236 La. 40, 106 So.2d 709, both of which were cited with approval in the majority opinion. In each of those cases it was held that the refusal of the trial judge to give a special charge on conspiracy was correct and did not constitute reversible error. In my view the Fletcher case was correctly decided, since the charge was against only the one defendant and thus did not necessarily involve a conspiracy and since there was no evidence of a conspiracy adduced on the trial. The Gunter case stands alone in our jurisprudence, and if it can be deemed authority for the holding of the majority, it is contrary to the established jurisprudence of this court, as shown by the cases cited above, as well as to the juris-

prudence of other states, and contrary to the express provisions of our statutory law embodied in former R.S. 15:385 and Article 802 of our present Code of Criminal Procedure. It should therefore be disregarded or, if necessary, overruled.

## ON REHEARING

HAMLIN, Justice:

On original hearing, we set aside the convictions and sentences of the defendants and remanded this case for a new trial. We disposed of only Bill of Exceptions No. 29, finding that it was with merit and that the error complained of therein was prejudicial to the defendants. On application of the State, an unlimited rehearing was granted. Herein, we shall consider all bills of exceptions reserved during the course of trial and not abandoned in this Court.

Defendants were jointly charged by bill of information containing two counts, with a violation of LSA–R.S. 40:962 on May 21, 1965. The first count charged them with wilfully and unlawfully selling marijuana to Ben Fullington; the second count charged them with the wilful and unlawful possession of marijuana, a narcotic drug. They were tried and all found guilty as charged on both counts and sentenced to serve lengthy terms in the State Penitentiary.[1]

1. Skinner was sentenced to serve ten years at hard labor in the State Penitentiary under the first count and five years at hard labor in the State Penitentiary under the second count, the sentences to run concurrently. Under the provisions of LSA–R.S. 15:529.1 (Sentences for second and subsequent of-

They appealed to this Court and the proceedings, supra, transpired.

## BILLS OF EXCEPTIONS NOS.
## 6, 18, 19 and 21

The above bills are related and will be jointly discussed and determined.

Bill of Exceptions No. 6 was reserved when the trial judge overruled defense counsel's objection to certain parts of the district attorney's opening statement and also denied counsel's motion for a mistrial.

The district attorney's opening statement, which sets forth the alleged pertinent facts of this case, recites in the main:

"* * * As set out in the bill of information, the defendant, Alton Charbonnet, August Gueldner, and William Skinner, are charged with the violation of Revised Statute 40:962, relative to the sale and possession of marijuana. Said offense occurred on May 21, 1965. * * * The facts will show that on May 21, 1965, Special Agent Benjamin Fullington of the Louisiana State Police Department, in his role as undercover agent, went to Skinner's Motor Mart at 2101 Canal in the City of New Orleans and met with the defendants, August Gueldner and William Skinner for a tentative narcotics buy. At the time Skinner stated to the agent he knew someone who could get the stuff. In Agent Fullington's presence, the defendant, Skinner, made a phone call and after completing the call, told the agent he would have a matchbox of marijuana delivered that night at 2101 Canal. At about 8:00 P. M. that evening Agent Fullington returned to the auto lot and asked Skinner and Gueldner if the stuff had been delivered. Skinner confirmed the delivery and stated the man who sold it wanted to meet him. Skinner then introduced Agent Fullington to Alton Charbonnet. Charbonnet told Agent Fullington that the stuff was stashed under the seat of a 1960 white Lincoln convertible which was parked in this lot. Upon reaching the 1960 Lincoln convertible which belonged to Skinner, Fullington reached under the seat on the driver's side and removed a matchbox which contained a brownish green vegetable matter later identified as marijuana. * * * During the course of the trial the State will introduce evidence of a subsequent sales transaction involving the three defendants to Detective Russell Hebert, an undercover agent, in order to show system, intent, and guilty knowledge, which oc-

fenses). Charbonnet was sentenced to serve fifty years at hard labor in the State Penitentiary under the first count and twenty years under the second count, the sentences to run concurrently. Also under LSA-R.S. 15:529.1, Gueldner was

sentenced to serve sixteen years and eight months at hard labor in the State Penitentiary under the first count and five years under the second count, the sentences to run concurrently.

curred on May 28, 1965. * * * these defendants were arrested at a later date when the undercover operation was concluded. At the time of the arrest of the defendant, William Skinner, he made certain oral statements, admissions, and/or confessions, which the State will attempt to introduce after laying the proper legal foundation. * * * The State will offer and introduce and file into evidence the following physical evidence which was sold to Agent Benjamin Fullington on May 21, 1965: One matchbox containing greenish brown vegetable matter, chemically analyzed as marijuana; one large evidence envelope and one small evidence envelope. The State will further offer, introduce and file into evidence the following physical evidence which was sold to Detective Russell Hebert on May 28, 1965: Nine handrolled cigarettes, chemically and microscopically classified as marijuana; one small evidence envelope, one large evidence envelope, and four capsules of white powder identified as heroin, an opium derivative, along with a small manila envelope and a large manila evidence envelope. * * *"

Bills of Exceptions Nos. 18, 19 and 21 were reserved when the trial judge overruled defense counsel's objections to the testimony of the State's witnesses with respect to the alleged sales of May 28, 1965 and the negotiations therefor (supra, opening statement), overruled counsel's objections to the introduction in evidence of the narcotics allegedly sold on May 28, 1965 (supra, opening statement), and denied defendants' motion for a mistrial.

Counsel for the defendants contended that the State should have elected to try the alleged case of May 28, 1965. They argued that there could be no system for the sale of narcotics—not being similar to embezzlement or an offense that presupposes a system. They argued that the mentioning of the events of May 28, 1965 prejudiced the rights of the defendants. Herein, they argue that unless this Court wishes to equate LSA–R.S. 15:456 with an informal "conspiracy" statute, something should be done to clarify the law quo ad the two aspects presented: "intent" and "continuity" of the offense or "system evidence."

 One of the steps in trial is the opening statement of the district attorney explaining the nature of the charge and the evidence by which he expects to establish the same. LSA–R.S. 15:333 (See, new Code of Criminal Procedure, Arts. 765 and 766). "The underlying spirit and purpose of Article 333 of the Code of Criminal Procedure mandatorily requiring an opening statement by the district attorney is to force him to disclose the state's evidence, not only to inform the court, the jury and the defendant of what facts the state intends to prove, but in fairness to permit the defendant to adequately present his defense and

avoid being taken by surprise." State v. Jones, 230 La. 356, 88 So.2d 655. In the exercise of a wise discretion, the trial judge controls the scope and extent of an opening statement, and a conviction will not be set aside for error therein unless the rights of an accused are plainly violated. State v. Clark, 231 La. 807, 93 So.2d 13. The opening statement forms no part of the evidence, has no binding force, and is designed only to give a general acquaintance with the case which will enable the jury to understand and appreciate the testimony as it falls from the lips of the witnesses. State v. Clark, supra.

In the district attorney's opening statement, we find nothing prejudicial to the substantive rights of the accused. LSA–R.S. 15:557 (See, new Code of Criminal Procedure, Art. 921). The district attorney merely stated what he intended to prove during the case. He apprised the defendants of evidence he intended to introduce; this enabled their counsel to adequately prepare their defense, thus avoiding the element of surprise.

LSA–R.S. 15:445 provides:

"In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction."

LSA–R.S. 15:446 provides:

"When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged."

In State v. Johnson, 228 La. 317, 82 So.2d 24, 29, we commented on rehearing that the general rule is that evidence of the commission of an offense other than the one with which a defendant is charged is not admissible. We said, however, that there are recognized exceptions as provided by Articles 445 and 446 of the Code of Criminal Law and Procedure, such as where the evidence is introduced for the purpose of rebutting the inference that the crime charged was not committed by accident or mistake but with a guilty knowledge or evil motive, and where the evidence shows a system of wrongdoing. We further stated that it is well recognized that the exceptions to the general rule apply not only to prior criminal offenses committed by the defendant, but also to offenses committed *subsequent* to the offense charged. See, State v. Maney, 242 La. 223, 135 So.2d 473; Cf. State v. Oliver, 247 La. 729, 174 So.2d 509;

State v. Evans (Butler), 249 La. 861, 192 So.2d 103; State v. Reese, 250 La. 151, 194 So.2d 729; State v. Richard, 245 La. 465, 158 So.2d 828.

Herein, a reading of the testimony attached to Bills of Exceptions Nos. 18, 19 and 21, a discussion of which we find unnecessary, discloses that the State introduced in evidence all testimony and physical evidence pertinent to the instant bills which it had referred to in the district attorney's opening statement. Proof was submitted of all allegations. The testimony adduced and the physical evidence introduced with respect to the transactions of May 28, 1965 (these transactions allegedly took place among *some* of the defendants, not all of them) were a part of the State's proof of the guilty knowledge, intent, and system of selling and possessing narcotics of all defendants. Under such circumstances, we find that the evidence was admissible under an exception to the general rule that evidence of the commission of an offense other than the one with which the defendants are charged is not admissible.

Bills of Exceptions Nos. 6, 18, 19 and 21 are without merit.

### BILL OF EXCEPTIONS NO. 8

Bill of Exceptions No. 8 was reserved when the trial judge sustained the State's objection to a question propounded by defense counsel to Officer Benjamin Fullington, a State witness.

Benjamin Fullington, an undercover detective with the Louisiana State Police, Detective Bureau, Narcotics, was also employed by Gulfco Finance Company at the time he was making the investigation which led to the defendants' arrest. He testified that on May 15, 1965, his superior at the finance company knew of his undercover work. He took applications for loans from Gulfco Finance Company on Skinner's Motor Mart lot, taking the applications for the defendant Skinner. He said he had seen Skinner on approximately twelve occasions prior to May 21, 1965. After testifying that he had "displaced" Ben Keenan as Manager of Gulfco, Fullington was asked:

"Did you at or about that time, while you were there and Mr. Keenan was there, have a discussion about the loans after Mr. Keenan gave you his opinion about some of the loans you were making?"

The State objected to the above question, and, as stated, supra, the objection was sustained. The witness did not answer.

We find that the evidence sought to be elicited was neither relevant nor material. We affirm the trial judge's per curiam to this bill. It recites:

"While the State witness, Officer Benjamin Fullington, was under cross-examination, the attorney for defendants asked several questions about loans he, the witness, was making.

"The State objected, stating as the reason for its objection that the question and answer would be irrelevant and immaterial.

"The defendants were on trial for selling and possessing narcotics and what loans of money the witness was making was certainly irrelevant and immaterial to the issues being tried.

"Attorneys for the defendants did not state at any time that their purpose was to test the credibility of the witness.

"Counsel for defendants, after the objection of the State, merely stated: 'I think it's material to show his approval of the loans that were no good.'"

Bill of Exceptions No. 8 is without merit.

### BILLS OF EXCEPTIONS
### NOS. 11, 14 and 15

The above bills are related and will be jointly discussed.

Bill of Exceptions No. 11 was reserved when the trial judge denied defense counsel's motion for a mistrial and sustained the State's objection to questioning Ben Fullington on cross-examination with respect to a booking of defendant Gueldner on July 30, 1965 with delivery of central nervous system drugs.

Bill of Exceptions No. 14 was reserved when the trial court sustained the State's objection to the following question propounded to Sgt. Russell Hebert on cross-examination:

"Tell His Honor and the gentlemen of the jury what Mr. Gueldner was booked with when he went to the First Precinct."

Bill of Exceptions No. 15 was reserved when the trial judge ruled the police arrest book inadmissible in evidence and sustained the State's objection to the following question:

"Does it show any complaint of a direct sale * * * Does that booking show a complaint of a sale on any date by Mr. Gueldner?"

Counsel for the defendants contend that the rulings of the trial judge were erroneous. They urge that they were unduly restrictive because counsel were trying to show that defendant Gueldner was first booked for an offense of which he was innocent, this charge being dropped and the instant one substituted. It is further argued that Gueldner had a legal prescription for possession of central nervous system drugs.

Defendants were charged by bill of information with the possession and selling of marijuana; they were tried on the information; they were not tried for the possession or delivery of central nervous system pills. The evidence sought to be adduced was irrelevant and immaterial. The trial judge correctly stated in his Per Curiam to Bill of Exceptions No. 14 that, "What a police officer books a prisoner with at a precinct station has nothing to do

with what charges the District Attorney files against the same person in Criminal District Court." Cf. State v. Young, 249 La. 1053, 1054, 193 So.2d 243.

Bills of Exceptions Nos. 11, 14 and 15 are without merit.

## BILL OF EXCEPTIONS NO. 12

Bill of Exceptions No. 12 was reserved when the trial court denied defense counsel's request for a mistrial and overruled their objections to certain testimony given by Sgt. Russell Hebert.

In his following per curiam to the instant bill, the trial judge states all of the circumstances connected with its reservation. His ruling is correct; we agree with his reasoning.

"This bill was reserved while the State was laying the predicate for the introduction into evidence of the confession or admission against interest of the defendant, William Skinner, which was done while the jury was outside of the Courtroom.

"The police officers had testified that while they were taking William Skinner to the police station he made a statement to them, which statement was made freely and voluntarily while riding to the station in an automobile.

"William Skinner took the witness stand and testified that the statement was freely and voluntarily made by him. He further

testified that he spoke to the officers, rather than the officers speaking to him.

"The Court held the statement of William Skinner to be free and voluntary and, therefore, admissible in evidence. "* * *

"After the jury was returned to the Courtroom the same procedure was followed and the Court, in the presence of the jury, admitted into evidence the statement of William Skinner. Mr. Gill made his objection and reserved his bill of exception.

"It later turned out that the statement of William Skinner made to the police was not a confession or admission but, in fact, was a denial of his guilt and a threat against the police officers who took part in the investigation.

"At this time the defense moved for a mistrial on the ground that the assistant district attorney, in his opening statement, stated that he would prove that the defendant, William Skinner, had made certain oral statements, admissions, and/or confessions and that the statement by the defendant, William Skinner, was not in conformity with the statement made by the Assistant District Attorney in his opening statement.

"The Court overruled the motion for a mistrial.

"Thereupon the defense reserved a bill of exceptions to the Court's ruling.

"Later during the trial, the Court in its charge to the jury charged the jury on this point as follows:

"The law requires and obligates the District Attorney, representing the State of Louisiana, to make an opening statement explaining the nature of the charge and the evidence by which he expects to prove same. The law leaves to the counsel for the defendant the option of explaining his defense and the evidence by which he expects to establish the same, or of waiving his right to make an opening statement.

"The function and purpose of an opening statement by the District Attorney is simply to explain the nature of the charge and the evidence by which he expects to establish the same; the opening statement by counsel for the defendant is to explain the theory of the defense and the evidence by which he expects to prove same. An opening statement made by the District Attorney or the counsel for the defendant is not part of the evidence and does not prove anything at all in the case. You are to consider only the evidence in the case and the testimony of sworn witnesses who have appeared before you on the witness stand.

"Should either the District Attorney or the counsel for the defendant make statements in an opening statement and fail to substantiate them by the testimony of sworn witnesses on the witness stand, you are to place no value whatsoever upon the statement made by them, but on the contrary, you should disregard the same as if never having been uttered."

The fact that the State did not introduce oral admissions and/or confessions of defendant William Skinner, which the district attorney in his opening statement said it would do, did not prejudice the substantial rights of the defendants. "Albeit, we know of no rule of law which requires that the State offer all evidence referred to by the prosecutor in his opening statement or any jurisprudence holding that the accused necessarily suffers prejudice if he does not. Quite the contrary, it would be more logical and reasonable to conclude that the failure or inability of the State to elicit any evidence outlined in the opening statement redounds to the advantage and benefit of the accused." State v. Johnson, 226 La. 30, 74 So.2d 402. See, State v. Augustine, 241 La. 761, 131 So.2d 56.

Bill of Exceptions No. 12 is without merit.

## BILL OF EXCEPTIONS NO. 23

Bill of Exceptions No. 23 was reserved when the trial court denied defense counsel's motion for a mistrial, said motion being based on the trial judge's refusal to grant a continuance.

The circumstances connected with the reserving of this bill are to the effect that

shortly before midnight, 11:40 P.M., March 21, 1966, the State rested its case. The following colloquy ensued:

"BY MR. GILL: Before asking for a recess, I want to say this. I have done the best I could. I am absolutely, you might say mortally tired. We have ten, possibly twelve, witnesses to place on the witness stand. If Your Honor please, I am certainly not trying to put anything off. I have done the best I could. I'm mortally tired.

"BY THE COURT: You have been after me all day, Mr. Gill. I've gotten tired of listening to you. I'm going to see if we can't finish this case tonight. Go to work and see if we can't finish the case tonight.

"BY MR. GILL: I'll do what Your Honor says.

"BY THE COURT: I'm sure everyone is tired. I have already asked the jury if they wanted to attempt to finish this case tonight and if we went to work on it without talking so much * * *.

"BY MR. GILL: I want to say one thing, Your Honor. I have a severe case of diabetes.

"BY THE COURT: I know you have been ill and I know we have been having continuances on top of continuances because you have been ill but I have my duties to perform too and one of them is

this case. I will gladly give you a recess for about three minutes and then we will come back and proceed with this case.

"BY MR. GILL: May I further say this. I tested myself for sugar * * *

"BY THE COURT: We will take a recess for three minutes.

"BY MR. GILL: If Your Honor please, I respectfully request Your Honor declare a mistrial.

"BY THE COURT: Request for mistrial is denied."

On motion for a new trial, it was alleged by counsel for Alton J. Charbonnet that defendant believes and is informed that one or more jurors were asleep during the presentation of evidence between the hours of 1:00 A.M. and 3:00 A.M., March 22, 1966, and that a new trial should be granted because the jurors were unable to give proper appreciation to the facts.

Counsel for the defendants, Skinner and Gueldner, alleged in motion for a new trial that, " * * * the Court specially erred in refusing to grant a continuance and a motion for a mistrial after the State had concluded the presentation of evidence, which was approximately 11:30 P.M. and that as observed by the Court, counsel for defendants had been asking that the matter be deferred to the following day because of counsel's physical condition, the magnitude and import of the trial and counsel's inabil-

ity to properly proceed further because of his physical condition." Counsel further alleged that during the course of the introduction of testimony by the defendants at both the late hours of the night and early hours of the following morning, some of the jurors were sleeping. Counsel still further alleged that during Mr. Gill's argument, one or more of the jurors were sleeping and that this fact was called to the attention of the court.

Since Bill of Exceptions No. 23 and the above portions of the motion for a new trial are related, we shall determine the merit of Bill No. 23 (Bill No. 23 also mentions the alleged sleeping of the jurors) and the merit of the above contention urged in the motion for a new trial hereinafter under our discussion of Bill No. 23.

It is Mr. Gill's position that reversible error was committed when the trial judge did not grant a continuance because of his alleged inability to defend his clients at the time the State rested its case. It is the contention of all defendants that the alleged sleeping of several jurors prejudiced their rights to a fair trial.

. . After the colloquy, supra, a thirty-five minute recess was taken, and the Court reconvened at 12:25 A.M., March 22, 1966. The jury had been to lunch at 1:05 P.M., March 21, 1966, and returned to their seats at 2:45 P.M. Court had recessed at 6:15 P.M. for dinner, and the jury returned to

the courtroom at 8:00 P.M. The jury also had the thirty-five minute recess before the defense began its presentation.

The defense presented its case, resting at 2:45 A.M., March 22, 1966. During the two hours, defense counsel called seventeen witnesses (some of them were character witnesses), whose recorded testimony consumes approximately eighty-one pages. The record definitely reflects that Mr. Gill was a sick man, but it also reflects that when he questioned defendants' witnesses, he was astute, thorough and vigorous. During the taking of testimony, he reserved bills of exceptions and engaged in colloquy with the court. The record discloses no haziness on the part of Mr. Gill, nor does it reflect any lack of alertness or perception. We conclude that no matter what his physical feelings were, such feelings, as well as his physical condition, had no effect on Mr. Gill's intellectual ability between 12:25 A.M. and 2:45 A.M., March 22, 1966. His personal physician testified on the hearing of the motion for a new trial that Mr. Gill's efficiency would have been almost nil after a twelve hour period. He said that Mr. Gill had an acidotic condition due to diabetes and, of course, nervous exhaustion. We have no doubt that Mr. Gill was tired, but his efficiency contradicted his physician's testimony. It is also to be noted that the physician was not in court while Mr. Gill was presenting his defense. We

find that defendants suffered no prejudice insofar as Mr. Gill was concerned.

A review of the pertinent evidence attached to the motion for a new trial constrains us to conclude that during the early hours of March 22, 1966, the jurors were cognizant of the proceedings and appreciated the facts as revealed. Wilson Landry, a juror alleged to have been sleeping, stated that he was the best judge of whether he was sleeping; he said that he was as wide awake as Mr. Gill. He said that no deputy sheriff touched him (defense counsel contends that he had to be awakened), and that he merely had to be given water when he was coughing. Lloyd Jones, the other juror alleged to have been sleeping, testified that he did not think he was sleeping; he rested his eyes once in a while. Herbert Wilson, a juror who allegedly voted not guilty, testified that he was not asleep and saw no other jurors sleeping. Salvador Marchese, Minute Clerk of Court, testified that Mr. Landry's eyes were closed, but that he could not truthfully answer whether he was asleep. A number of witnesses for the defendants testified that some of the jurors were sleeping. These witnesses, however, were not in close proximity to the jurors. After hearing the evidence on the motion for a new trial, the trial judge concluded that the jurors were not sleeping during trial. After a reading of the evidence adduced, we agree with his conclusion.

After the defense had completed its case, court recessed until 9:30 A.M. All parties were afforded a very short period for sleeping, but the record discloses that the closing arguments were full and were not curtailed, and that the jury deliberated approximately two hours and twenty-five minutes before arriving at a verdict. We conclude that the defendants suffered no prejudice.

 It is legion that the granting or refusal of a continuance rests in the sound discretion of the trial judge, and his ruling will not be disturbed except where his discretion has been arbitrarily or unreasonably abused. LSA–R.S. 15:320 (now Art. 712 of the new Code of Criminal Procedure); State v. Thomas, 214 La. 499, 38 So.2d 149; State v. Jones, 249 La. 324, 186 So.2d 608; State v. Ganey, 246 La. 986, 169 So.2d 73.

 Despite the facts that counsel suffered fatigue during the trial of this case and that the jury was forced to sit long hours, having little sleep, we conclude that the trial judge did not arbitrarily and unreasonably abuse his discretion in not granting a continuance. No substantial rights of the defendants were violated, nor were they prejudiced.[2]

---

2. We agree with the following statement of the State in its brief: "The State concedes that it was hard on the lawyers involved to get only a few hours sleep

Bill of Exceptions No. 23 is without merit.

## BILL OF EXCEPTIONS NO. 24

Bill of Exceptions No. 24 was reserved when the trial court refused to allow defense counsel to introduce in evidence a $25.00 receipt for a down payment on a 1959 Chevrolet Impala, allegedly dated May 20, 1965 and signed by defendant Gueldner, and a bill of sale for the car, allegedly dated May 21, 1965 and signed by defendant Gueldner. Both documents had been given to Virgie Niette.

The facts leading to the reservation of this bill are to the effect that Virgie Niette testified that on May 19, 1965, she went to Skinner's lot on Canal Street for the purpose of assisting her daughter, a minor, in locating an automobile for purchase. On the same day, she also went to Skinner's Gentilly lot to look at a car on which her daughter had her heart set. Mrs. Niette returned to the lot on May 20, 1965 and made a $25.00 down payment on a Chevrolet; the receipt for payment was signed by Gueldner, known to Mrs. Niette as "Richie," and by Mrs. Niette's daughter. Mrs. Niette went to the lot on May 21, 1965 for delivery

on the night of March 21–22, 1966, during the trial of this case, but *how were the accused prejudiced?* Under Article 557 of the 1928 Code of Criminal Procedure, Article 921 of the present code, and the well settled jurisprudence, persons who appeal to this Court are grant-

of the car. She said that she arrived at the lot at 9:00 A.M. and remained there until 2:30 P.M. She testified that she received a bill of sale dated May 21, 1965; it was signed by Gueldner. Mrs. Niette's testimony with respect to the presence of undercover agent Fullington, Skinner and Gueldner on Skinner's lot is as follows:

"Q. While you were there, did you see this young man [Fullington]?

"A. No, I did not.

"Q. When you got there, with reference to Mr. Skinner and Mr. Gueldner, on May 21st, I'm speaking of—you say you got there at 9:00—when you arrived at the lot, which one of these gentlemen did you see there?

"A. Richie.

"Q. Mr. Gueldner you are referring to?

"A. Yes, sir.

"Q. Did there come a time—was Mr. Skinner there when you got there?

"A. No, he was not.

"Q. Was he there that morning?

"A. No.

"* * *

ed a new trial only if a ruling of the trial judge has probably resulted in a miscarriage of justice, is prejudicial to the rights of the accused, or constitutes a substantial violation of a constitutional or statutory right."

"Q. Did there come a time when you later saw Mr. Skinner at the lot and, if so, about what time?

"A. About 1:00 in the afternoon.

"Q. Where was Mr. Gueldner all that time?

"A. He was with me.

"Q. What do you mean 'with me'?

"A. Because I was aggravating him about my automobile.

"* * *

"Q. Where was Mr. Gueldner from 9:00 to 12:00?

"A. Sitting in the office.

"Q. With you?

"A. Right. [On cross-examination Mrs. Niette testified that Richie did not leave her presence; she stayed by his side, not giving him a chance to leave. He was with her from 9:00 A.M. until 2:30 P.M.; she was mad and aggravated.]

"Q. Mr. Fullington stand up. Did you see this gentleman there?

"A. No, I did not.

"Q. Did you see him come there and talk to Mr. Gueldner or anyone else there that morning?

"A. No, sir."

After adducing the above testimony, counsel for defendants offered in evidence the $25.00 receipt and the bill of sale, supra. The trial court refused to admit the documents in evidence, holding that they were irrelevant and immaterial.

In Bill of Exceptions No. 24, counsel for the defendants argue: "* * * this was legal evidence of and on behalf of the defendants to show and cooperate [sic] Mrs. Niette to the effect that she did see Mr. Richard Gueldner on that day and that she was with him at all times that morning, hence he could not have been arranging for a narcotic sale and/or delivery, and that Mr. Skinner was absent and hence could not be present as related by witnesses tending to show that he had arranged for a sale of marijuana that day. That same should have been shown to the jury, which would have been proof positive in cooperation [sic] of her testimony as to events that happened on the day that the law was alleged to have been violated and which happened at a time unsuspicious and in a unsuspicious manner. And the refusal by the Court to permit the offer in evidence was tantamount to saying to a jury that the court did not believe the lady's testimony or that the receipt was a valid and truthful one."

Undercover agent Benjamin Fullington testified that he went to Skinner's lot on the morning of May 21, 1965 and told Skinner he was looking for a contact to buy marijuana. He said that Skinner made a telephone call, at which time he and Gueldner were also present. Fullington placed him-

self on the lot at 11:00 A.M., May 21, 1965; his testimony is contradicted by that of Mrs. Niette, supra.

▰ Mrs. Niette's testimony with respect to her presence on the Skinner lot, as well as her testimony with respect to her purchasing an automobile, is not contradicted. Had the documents been admitted in evidence, they would have only served as cumulative and corroborative proof of un-contradicted facts. Under such circumstances, the documents were not relevant and material. Cf. State v. Jackson, 248 La. 919, 183 So.2d 305.

Fullington's testimony, which, as stated supra, was contradicted in part by Mrs. Niette, and Mrs. Niette's testimony with respect to the parties she saw on the lot, as well as her testimony with respect to when and for how long she saw Skinner and Gueldner, went to the jury for its consideration and determination of its credibility.

We do not find that the defendants suffered any prejudice by the trial judge's ruling that the instant documents were inadmissible in evidence; nor do we find that he abused his discretion.

Bill of Exceptions No. 24 is without merit.

### BILL OF EXCEPTIONS NO. 27

Bill of Exceptions No. 27 was reserved when the trial judge denied defense counsel's motion for a mistrial based on the following statement contained in the State's closing argument:

"* * * We seek the truth. Mr. Gill and Mr. Link have twisted phrases which, in some respects, is their prerogative in an argument because what I say and what Mr. Link and Mr. Gill have to say is purely our appreciation of the particular case that is presented to you. As jurors, though this trial has been long, you have paid attention to your witnesses. There were witnesses that were placed on the stand and there were witnesses who were not placed on the stand * * *"

Counsel for the defendants contend that the above remark was damaging to the defendants, and that the obvious impact of the statement was calling attention to the fact that the defendants, Gueldner and Charbonnet, had not testified. (Skinner took the stand for a limited purpose.) They argue that the State's remark could have served no other purpose, since Gueldner and Charbonnet called no witnesses on their own behalf.

In his per curiam the trial judge stated:

"Counsel had in no manner, shape or form referred to the defendants in his statement but had referred to the witnesses.

"There were a number of witnesses both for the State and the defense subpoenaed of which eighteen (18), including the defendant, William Skinner, took the

witness stand and testified, and four (4) that were not placed upon the witness stand.

"The witnesses that did not take the witness stand are the following named persons: Jack Weis, Richard Weis, David Steece and Gerald Andry.

"The Court is and was of the opinion that the Assistant District Attorney was not referring to the defendants in his remark but was simply referring to the witnesses.

"The Court is of the further opinion that the remarks of the counsel for the State complained of by the defense did not influence the jury and that the remarks did not contribute to the verdict found.

"State v. Shoemake [143 La. 65] 78 So. 240." [3]

With respect to the trial judge's per curiam, counsel for the defendants argue: "This conclusion, of course, is based upon the false assumption *that the jury knew there were other witnesses who had been subpoenaed but not called.* It may well be

that the Court, having access to the subpoenas, could determine what witnesses had been called. But the jury had no means of knowing this. Merely because a large group of witnesses were called in at the start of the trial (if, indeed, they ever were) this would not give the jury a sufficiently accurate run-down of the witness situation to indicate that there were any other witnesses left, except the defendants who had not testified."

▬ Art. I, Sec. 11, La.Const. of 1921, provides that no person shall be compelled to give evidence against himself in a criminal case or in any proceeding that may subject him to criminal prosecution. In Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, the United States Supreme Court stated that the Fourteenth Amendment forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt. It held that the self-incrimination clause of the Fifth Amendment is made applicable to the States by the Fourteenth Amendment. This Court has

---

3. In State v. Shoemake, 143 La. 65, 78 So. 240, the district attorney made the following remark in his argument to the jury: " 'You are called upon, gentlemen, to say whether or not under the proof in this case there is anything to Christian experience and Christianity and whether Christianity in this parish is dead.' " In holding that the remark was not objectionable, this Court stated: "The remark of the district attorney with reference to Christianity was not cal-

culated to have any influence on the minds of the jurors, and it certainly did not contribute to the verdict found. The judge states in his per curiam to a bill of exceptions that defendant was charged with the murder of a female child some 16 years of age, yet the verdict found him guilty without capital punishment. The remark of the district attorney appears, if it had any effect, to have been favorable to the accused."

consistently held that a district attorney commits reversible error when he comments upon the failure of a defendant to take the witness stand. In the instant case, however, we do not think that the comment of the State had reference to the defendants Gueldner and Charbonnet. We agree with the trial judge as to the import of the remark—it referred to witnesses and not to the defendants Gueldner and Charbonnet. Defendants suffered no prejudice, and reversible error was not committed. See, State v. Bentley, 219 La. 893, 54 So.2d 137; State v. Simpson, 247 La. 883, 175 So.2d 255; State v. Bickham, 239 La. 1094, 121 So.2d 207.

Bill of Exceptions No. 27 is without merit.

## BILL OF EXCEPTIONS NO. 35

This bill will be further discussed at the end of our opinion under "Motions for a New Trial."

Bill of Exceptions No. 35 was reserved when the trial court overruled defendant Charbonnet's motion for a new trial.

In his motion for a new trial, Charbonnet contends in part that his constitutional rights, Art. I, Sec. 9, La.Const. of 1921, were violated because he was not present either in person or represented by counsel at the hearing of the motion to suppress during October, 1965.

We agree with the State that the instant bill is totally lacking in substance. The minutes of the trial court and the endorsements on the Bill of Information reflect that the present information was filed on August 11, 1965. Charbonnet and the other two defendants were arraigned on August 26, 1965; each pleaded "Not Guilty." Gueldner and Skinner were allowed ten days in which to file pleadings, and the court ordered Charbonnet to return on September 2, 1965 to determine counsel. On September 2, 1965, Charbonnet was granted time until September 10, 1965 to obtain counsel. He evidently did not secure counsel, and, on September 20, 1965, the trial court appointed Joseph Monie, Esq., to represent the defendant Charbonnet; thereafter, he was never without counsel. On October 8, 1965, the appointment of Monie was rescinded, and Bentley Byrnes, Esq., was appointed as counsel for Charbonnet. The appointment of Byrnes was rescinded on January 11, 1966, and Maurice Burk, Esq., was appointed counsel for Charbonnet. On this same day, Robert Link, Esq., filed a Motion for Reduction of Bail as to Alton Charbonnet. On January 18, 1966, the trial court rescinded the appointment of Burk and appointed Link to represent Charbonnet in any further proceedings; Link fulfilled and is fulfilling the assignment.

During the fall of 1965, court appointed counsel for Charbonnet filed no preliminary pleadings. It was during this time

that counsel for Skinner and Gueldner filed the Motion to Suppress and Dismiss. The motion makes no mention of Charbonnet; it alleges, "Now comes your defendants, William R. Skinner and August R. Gueldner." Counsel for Charbonnet and Charbonnet himself did not appear at the trial of the motion, but, on January 31, 1966, the trial court granted Mr. Link's Motion to Obtain Transcripts of Preliminary Hearing and other proceedings previously held for co-defendants. Mr. Link took no further action; trial ensued on March 21–22, 1966. Mr. Link joined with Mr. Gill, counsel for Skinner and Gueldner, during the course of trial. It was only after trial that he made the present complaint with respect to defendant Charbonnet's alleged rights.

▬▬ It is true that the minutes of court must show that the accused was present at every important stage of the trial for a felony from the moment of his arraignment to his sentence, State v. Pepper, 189 La. 795, 180 So. 640; State v. Breedlove, 199 La. 965, 7 So.2d 221, but, as stated supra, defendant Charbonnet pleaded "Not Guilty," and was thereafter represented by counsel. His counsel did not file a Motion to Suppress. Under such circumstances, we conclude that it was not imperative that he be present at the trial of the Motion to Suppress and Dismiss filed by defendants Skinner and Gueldner. Charbonnet suffered neither prejudice nor violation of his constitutional rights.

Bill of Exceptions No. 35 is without merit.

## BILL OF EXCEPTIONS NO. 29

Bill of Exceptions No. 29 was reserved when the trial judge overruled defendants' objection to the trial judge's charge on "Conspiracy." The objection was made by Mr. Gill, who stated:

, "I respectfully object to Your Honor's charge on conspiracy, both as to its tenor and applicability in this case. I object to Your Honor's charge on confessions and inculpatory statements and on circumstantial evidence as regards conspiracy and also with reference to system."

In our original opinion, we recited in its entirety the trial judge's charge with respect to "Conspiracy." We find no need for reiteration herein. We correctly said that it contains a full statement relative to the law of conspiracy.

Counsel for the defendants objected to the conspiracy charge both as to its tenor and applicability in this case. In our original opinion, as stated supra, we found that the objection had merit. After reconsideration, we now find that the trial judge did not abuse his discretion in giving the conspiracy charge, and that defendants' objections do not show that he committed reversible error.

We originally relied on the cases of State v. Gunter, 208 La. 694, 23 So.2d 305, and

State v. Fletcher, 236 La. 40, 106 So.2d 709. These cases only hold that the trial judges therein committed no error in refusing to give conspiracy instructions to the jury. We do not find that the cases provide authority for the present decision.

In the Fletcher case we did say that: "The request to include a statement concerning the law of conspiracy in the general charge was likewise properly denied as being irrelevant. Appellant was charged with the substantive offense of possessing narcotics and not with the separate and distinct crime of a conspiracy to possess them, which is composed of different elements." It must be noted that only one defendant, George Fletcher, was charged. The trial judge, as found by this Court, did not commit reversible error in refusing to give the conspiracy charge.

The Gunter case involved three defendants, Jeff Gunter, Wilson Hargraves and Henry Murray. They were charged by bill of information with the offense of simple kidnapping. Murray pleaded guilty and was used as a state witness; Hargraves and Gunter were jointly tried. In the body of this Court's opinion, we find the following statement:

"The defendants in this case were jointly charged with the offense of simple kidnapping under Article 45 of the Criminal Code. They were charged as principals and not as conspirators. Murray was an accomplice in the crime, and his testimony consisted merely of a recital of the various acts done by each defendant in the perpetration of the crime."

This Court affirmed the conviction of Gunter but set aside that of Hargraves, finding that the trial judge had abused his discretion under the facts disclosed in not appointing a lunacy commission to determine the issue of present insanity. We thus find that this Court affirmed the conviction of only one defendant. Therefore, even though the trial judge refused to instruct the jury with respect to conspiracy and we approved his action, we cannot say that the case lends support to the instant defendants' contentions. It is not apposite.

"Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.

"Where the intended basic crime has been consummated the conspirators may be tried for either the conspiracy or the completed offense, and a conviction for one shall not bar a prosecution for the other.

" * * * " LSA–R.S. 14:26. Cf. 31A C.J.S. Evidence § 362 et seq.

It has been held under the jurisprudence of this Court that where an indictment charges that the crime was committed by two or more persons, such an indictment necessarily involves a conspiracy. Cf. State v. Ford, 37 La.Ann. 443; State v. Dundas, 168 La. 95, 121 So. 586; State v. Gunter, 180 La. 145, 156 So. 203; State v. Gebbia, 121 La. 1083, 47 So. 32; State v. Capaci, 179 La. 462, 154 So. 419; State v. Melerine, 236 La. 929, 109 So.2d 471.

■ Herein, the State offered evidence seeking to prove a conspiracy among three people jointly charged with possessing and selling marijuana. It was properly admitted and ruled admissible. State v. Gebbia, supra; State v. Brasseaux, 163 La. 686, 112 So. 650; State v. Robichaux, 165 La. 497, 115 So. 728; State v. Terrell, 175 La. 758, 144 So. 488; 16 Am.Jur.2d, Conspiracy, Sec. 37, p. 147; Wharton's Criminal Law and Procedure, Vol. IV, Sec. 1779, p. 591. Cf. LSA–R.S. 15:455. It is also to be noted that in his per curiam to Bill of Exceptions No. 19, the trial judge states, "The State had already established that the three defendants on trial had conspired together

to sell marijuana to Officer Fullington on May 21, 1965." Cf. State v. Turner, 193 Kan. 189, 392 P.2d 863.

■ The question of whether a conspiracy had been established was a question of fact for the jury. Therefore, the jury had to be instructed on the law of "Conspiracy."

"While it is error to submit the question of conspiracy if there is no evidence thereof, where there is evidence that the defendants had entered into a conspiracy to commit the crime charged, an instruction on the law of conspiracy is proper, and this, even though the indictment or information may not charge a conspiracy." 53 Am.Jur., Trial, Sec. 673, p. 519.

"Even though Congress has created a separate crime of conspiracy, it is settled that joint participators in the commission of the substantive offenses may be denominated as conspirators. Kumpe v. United States, 250 F.2d 125 (C.A.5, 1957). The conspiracy may be shown as an evidentiary fact to prove participation in the substantive crime. 16 Am.Jur.2d Conspiracy, § 38, p. 147 [4] (1964).

---

4. "Declarations and acts of one conspirator pursuant to or in furtherance of the conspiratorial purpose are admissible in evidence against any other member of the conspiracy if there is at least prima facie proof of the conspiracy alleged by the prosecution. Admissible under this rule and subject to its requirements are books and records used by a coconspirator and, in a prosecution for conspiracy to commit subversive acts, a subversive newspaper published by one of the conspirators. *This rule is applicable in a prosecution for a substantive crime where conspiracy is incidentally involved as well as in a prosecution for the crime of conspiracy itself.* The rule applies whether or not the coconspirator whose declarations are put in evidence is a codefendant of the conspirator on

"It was the function of the Court to define the term 'conspiracy' and to instruct the jury as to the circumstances under which the out-of-court statements were admissible." United States v. Hoffa, 6 Cir., 349 F.2d 20, 41, affirmed, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374. See, 66 A.L.R. 1311; State v. Capaci, 179 La. 462, 154 So. 419.

 Herein, it was the duty of the trial judge .to charge the jury on the law applicable to the instant case and to charge the jury that it was their duty to accept and apply the law as laid down for them by the judge. LSA–R.S. 15:385 (new Code of Criminal Procedure, Art. 802). After our present study of this matter and further research of the jurisprudence, we conclude that the conspiracy portion of the charge complained of in Bill of Exceptions No. 29 did not constitute an abstract, inapplicable discourse on the law of "Conspiracy," and was proper.

trial. The evidence is admissible against an original conspirator and also against one who joined the conspiracy after its inception.

"* * *" 16 Am.Jur.2d, Extrajudicial declaration or act of coconspirators, Sec. 38, p. 147. (Emphasis supplied.)

See, also, 23A C.J.S. Criminal Law § 1287, Conspiracy, p. 692, to the effect: "Where there is evidence relating to conspiracy in committing the offense, an instruction as to such law is proper, but where the evidence does not show a conspiracy, an instruction as to such law is erroneous, and need not be given, nor

██ The rights of the accused were not prejudiced by the charge. In rendering the charge on the law of "Conspiracy," the trial judge neither abused his discretion nor committed reversible error.

Bill of Exceptions No. 29 is without merit.

## MOTIONS FOR A NEW TRIAL

As stated supra, counsel for defendant Charbonnet and counsel for defendants Skinner and Gueldner filed separate Motions for a New Trial.

In our determination of some of the bills of exceptions, supra, we ruled on certain contentions contained in the Motions for a New Trial and found that they were without merit. We have now considered all of the remaining allegations and contentions of the Motions for a New Trial and find that they set forth nothing new for our consideration. All matters urged and not abandoned in this Court were discussed in the bills of exceptions, supra.

need an instruction as to abandonment of the conspiracy be given where there is no evidence of such withdrawal. Where no conspiracy is shown, the court should instruct that accused could not be convicted unless he personally committed the crime charged. On the other hand, where the state's theory is that a conspiracy existed, an instruction that mere presence at the commission of the crime, although such presence is for the purpose of aiding in the commission thereof, is insufficient to constitute guilt, if no actual aid or encouragement is rendered the principal, is properly, refused as ignoring the issue of conspiracy."

For the reasons assigned, the convictions and sentences are affirmed.

McCALEB, J., concurs in the decree, being now convinced as to Bill No. 29 that, with the exception of State v. Gunter, 180 La. 145, 156 So. 203, the jurisprudence of this Court is well settled that the judge is obliged to give a charge on conspiracy in prosecutions for a crime committed by two or more persons.

HAMITER, J., dissents, he adhering to the written reasons assigned by him on the original hearing.

204 So.2d 395

**BATON ROUGE WOOD PRODUCTS, INC.,**

v.

**Emile G. EZELL.**

**No. 48559.**

Nov. 6, 1967.

Rehearing Denied Dec. 11, 1967.

